**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Charles SHOTWELL, Jr., Appellant.**

Superior Court of Pennsylvania.

Argued June 3, 1998.

Filed Sept. 1, 1998.

Joseph M. Devecka, State College, for appellant.

Ann Targonski, Asst. Dist. Atty., Shamokin, for Com., appellee.

Before KELLY, J., and CERCONE, President Judge Emeritus, and MONTEMURO,* J.

KELLY, Judge.

Appellant, Charles Shotwell, Jr., asks us to determine whether the trial court erred when it admitted "course of conduct" testimony at trial; when it denied appellant's motion for a mistrial based on alleged references to appellant's post-arrest silence; and, when it imposed an order of restitution despite the outcome of appellant's personal bankruptcy proceedings. We hold that the trial court properly admitted the testimony of Detective Hodge regarding his investigation. We also hold that the prosecutor's questions did not violate appellant's constitutional right to remain silent. Finally, we hold that appellant's sentence of restitution is not void as a result of his personal bankruptcy proceedings. Accordingly, we affirm appellant's judgment of sentence.

The relevant facts and procedural history are as follows. In December of 1995, appellant represented himself as a licensed securities broker to Donna Gurba. Appellant knew Ms. Gurba because he previously had agreed to install a furnace for her in her home. Appellant told Ms. Gurba that he was the president of a company named Shore Associates Inv., Inc., which invested in various commodities. Appellant convinced her that she could significantly increase her money with little risk by investing it with him. Between December 1, 1995 and January 26, 1996, Ms. Gurba wrote checks to appellant totaling over $71,000.00, which appellant promised to repay. Ms. Gurba was to receive weekly interest on her investment and the return of the balance of her money, once the investment period ended. Appellant wrote seven checks to Ms. Gurba as "security" for the money she had invested with him. Meanwhile, appellant filed a personal bankruptcy petition on January 5, 1996, allegedly listing Ms. Gurba as an unsecured debt in dispute in the amount of $75,000.00.

When Ms. Gurba attempted to cash appellant's checks on January 26, 1996, the bank refused the checks because appellant's accounts did not have sufficient funds to cover any of the checks. Ms. Gurba also contacted appellant in an effort to reclaim her original investment. Appellant did not return Ms. Gurba's money and ceased to respond to her telephone messages. As a result, on February 1, 1996, Ms. Gurba contacted the Northumberland County District Attorney's Consumer Affairs Office regarding appellant's failure to return her money.

Following an investigation by the Northumberland County District Attorney's Office, Detective James Hodge filed a criminal complaint against appellant on May 7, 1996. The complaint charged appellant with six counts of theft by deception [1], six counts of theft by failure to make required disposition of funds [2], and three counts of securities violations [3]. On May 13, 1996, appellant was arrested and, on September 5, 1996, he was arraigned before the district magistrate.

On March 18, 1997, a jury trial commenced before the Honorable Barry F. Feudale, President Judge, presiding. At trial, appellant's counsel objected to testimony provided by Detective Hodge, the investigating officer, as a long hearsay narrative prohibited by established Pennsylvania law. In addition, appellant's counsel also objected to questions by the Commonwealth, and testimony by Detective Hodge, which allegedly referred to appellant's post-arrest silence. On March 19, 1997, the jury convicted appellant of six counts of theft by deception, six counts of theft by failure to make required disposition of funds, and one count of violating the Securities Act. Appellant filed post-trial motions seeking a new trial and modification of his sentence. The trial court denied these motions. Appellant timely filed this appeal.

Appellant raises the following issues in this appeal:

I. DID THE TRIAL COURT ERR IN NOT SUSTAINING AN OBJECTION TO THE HEARSAY NARRATIVE OF

* Retired Justice assigned to the Superior Court.

1. 18 Pa.C.S.A. § 3922(a)(1)–(3).

2. 18 Pa.C.S.A. § 3927(a).

3. 70 P.S. §§ 1–201, 1–301, 1–401.

COUNTY DETECTIVE JAMES HODGE, REQUIRING A NEW TRIAL?

II. DID THE TRIAL COURT ERR IN NOT GRANTING A MISTRIAL AFTER REPEATED QUESTIONS PATIENTLY [sic] DESIGNED TO REFER TO CHARLES SHOTWELL'S POST ARREST SILENCE, REQUIRING A NEW TRIAL?

III. DID THE PREVIOUS PERSONAL BANKRUPTCY OF CHARLES SHOTWELL DISCHARGE THE DEBT OF DONNA GURBA, MAKING HIS ARREST ON OR AFTER MAY 7, 1996 AN EFFORT BY DONNA GURBA TO AVOID THE CONSEQUENCES OF THE PERSONAL BANKRUPTCY, REQUIRING MODIFICATION OF SENTENCE TO OMIT RESTITUTION TO DONNA GURBA?

(Appellant's Brief at 3).

■ Our standard for reviewing the trial court's denial of a motion for new trial is whether the trial court abused its discretion. *Commonwealth v. Rodriguez*, 451 Pa.Super. 474, 482, 679 A.2d 1320, 1325 (1996), *appeal denied*, 549 Pa. 715, 701 A.2d 577 (1997). *See also Commonwealth v. Pirela*, 398 Pa.Super. 76, 580 A.2d 848 (1990), *appeal denied*, 527 Pa. 672, 594 A.2d 658 (1991). "Unless there are facts and inferences of record that disclose a palpable abuse of discretion, the trial judge's reasoning should govern." *Commonwealth v. Betz*, 444 Pa.Super. 607, 616, 664 A.2d 600, 604 (1995), *appeal denied*, 544 Pa. 600, 674 A.2d 1065 (1996)(citing *Commonwealth v. Brown*, 538 Pa. 410, 435, 648 A.2d 1177, 1189 (1994)).

In his first issue, appellant argues that the trial court erred when it denied his motion for a new trial based on an objectionable, long hearsay narrative by Detective Hodge. Appellant asserts that the narrative was unduly prejudicial as it included statements of a highly incriminating nature which were likely understood by the jury as proof of appellant's guilt. We disagree.

■ The admission or exclusion of evidence is a matter for the sound discretion of the trial judge. *Commonwealth v. Stringer*, 451 Pa.Super. 180, 185, 678 A.2d 1200, 1202 (1996), *appeal denied*, 546 Pa. 679, 686 A.2d 1310 (1996). Absent an abuse of discretion such a ruling will not be disturbed. *Id. See also Commonwealth v. Glover*, 399 Pa.Super. 610, 582 A.2d 1111 (1990).

■ The established definition of hearsay is an out of court statement offered to prove the truth of the matter asserted. *Commonwealth v. Ellis*, 700 A.2d 948, 960 (Pa.Super.1997)(citing *Commonwealth v. Collazo*, 440 Pa.Super. 13, 654 A.2d 1174 (1995)). Certain out-of-court statements offered to explain a course of conduct are admissible as an exception to the hearsay rule as these statements are not offered for the truth of the matters asserted; they are offered to show information upon which the police acted. *Id.*

Well-settled Pennsylvania law states that an appellant must specify where within the certified record the challenged testimony appears. *Commonwealth v. Gray*, 415 Pa.Super. 77, 98, 608 A.2d 534, 544 (1992) (citing Pa.R.A.P. 2119(c)). Otherwise, the issue is waived. *Id.* In the instant case, appellant presents a short, general statement that the testimony of Detective Hodge was a long hearsay narrative subject to exclusion under *Commonwealth v. Palsa, supra*. Appellant then cites to two specific instances in the record, which he finds objectionable. Accordingly, we will examine those specific references to the trial testimony. *See Commonwealth v. Gray, supra.*

■ At trial, Detective Hodge testified that, as part of the investigation, Mrs. Deromedi, the Director of the Consumer Affairs Office, sent a certified letter to appellant. Detective Hodge explained that he was personally familiar with the actions taken by the Consumer Affairs Office in this case and specifically with respect to appellant. Detective Hodge did not testify regarding the content of the letter. Instead, the actions of Mrs. Deromedi were referenced only in general terms as a limited part of the overall investigation of the victim's complaint. Thus, the testimony regarding the sending of the certified letter was not excludable under *Commonwealth v. Palsa, supra.*

■ At trial, Detective Hodge˙also testified that, during his investigation, he had managed to obtain a copy of a lease agreement between Shore Associated Investments, Inc. and a person named Kevin Knouse. Appellant did not object to this particular testimony at trial. Therefore, the issue has not been properly preserved for appeal. *See generally Commonwealth v. Pearson*, 454 Pa.Super. 313, 319, 685 A.2d 551, 554 (1996), *appeal denied*, 549 Pa. 699, 700 A.2d 439 (1997).

■ Moreover, the testimony regarding the lease did not delve into the nature or details of the lease or include any statements allegedly made by Mr. Knouse. To the contrary, this testimony was also limited to and offered in the context of Detective Hodge's investigation of Ms. Gurba's complaint. Thus, the lease testimony was not excludable under *Commonwealth v. Palsa, supra.* Accordingly, appellant's first issue warrants no relief.

In his second issue, appellant argues that the trial court erred in refusing to grant a mistrial as a result of Detective Hodge's comment that appellant had not responded to the Detective's investigation. This comment, appellant claims, raised an inference that appellant had a duty to respond to the investigation. Therefore, any reference to appellant's failure to respond to the investigation was unduly prejudicial. Appellant also argues that the Commonwealth pursued a line of questions that could arguably raise an impermissible inference regarding appellant's post-arrest silence.[4] We disagree with each of these contentions.

■ "It is a clear violation of the accused's constitutional right against self-incrimination to make a reference at trial to his silence while in police custody." *Commonwealth v. Pearson, supra* (quoting *Commonwealth v. Holloman*, 424 Pa.Super. 73, 78, 621 A.2d 1046, 1048 (1993); *Commonwealth*

*v. Gbur*, 327 Pa.Super. 18, 24, 474 A.2d 1151, 1154 (1984)). "Not every such reference, however, requires a new trial ... for the trial court may promptly and adequately give a cautionary instruction to cure what might otherwise be reversible error." *Commonwealth v. Pearson, supra* (citing *Commonwealth v. Gbur supra*). To determine whether a cautionary instruction cured a reference to appellant's post-arrest silence, this Court must consider:

> 1) the nature of the reference to the defendant's silence; 2) how it was elicited; 3) whether the district attorney exploited it; and 4) the promptness and adequacy of the cautionary instruction. If the reference to the accused's silence is of a nature that would seriously compromise the jury's objectivity and is likely to deprive the accused of a fair trial, curative instructions are inadequate and a new trial is required.

*Commonwealth v. Pearson, supra* at 319–20, 685 A.2d at 554. Exploitation occurs when the prosecutor asks the jury to draw an improper inference from the silence of an accused. *Commonwealth v. DiPietro*, 538 Pa. 382, 648 A.2d 777 (1994).

■ In the instant case, the Commonwealth asked Detective Hodge, "What action did you take next?" Detective Hodge answered, "Based on all my information I gathered through my investigation *and not getting a response from Mr. Shotwell or anything on my investigation,* I filed a criminal complaint and ——." (T.T. 3/18/97 at 135; R.R. at 34a.) Appellant's counsel immediately objected to this testimony. There is no evidence, which suggests that the Commonwealth intentionally elicited the inadvertent reference to appellant's failure to respond to the investigation. Instead, the record reflects an unexpected answer to a very general question. Further, the Commonwealth made no attempt to exploit the remark, as the prosecutor did not refer to it at any other time during trial. *See Com-*

4. The Commonwealth argues that this issue is waived because appellant did not raise it in his post-verdict motion to the trial court. We disagree. According to Rule 1410B(1)(c) of the Pennsylvania Rules of Criminal Procedure, "[i]ssues raised before or during trial shall be deemed preserved for appeal whether or not the appel-

lant elects to file a post-sentence motion on these issues." Pa.R.Crim.P. 1410B(1)(c). Counsel preserved this issue for appellate review by objecting to the testimony and questions, and requesting a mistrial. (N.T. 3/18/97 at 135, 138 and 140). Accordingly, this issue is properly before this Court on appeal.

*monwealth v. DiPietro, supra. See also Commonwealth v. Gbur, supra* (no misconduct where prosecutor did not refer to defendant's silence, in question directed to witness). Finally, the trial court immediately struck the Detective's response and instructed the jury to disregard it. Appellant concedes that the trial court sustained the objection, struck the comment, and immediately issued a curative instruction to the jury to disregard the response. *See* Appellant's Brief at 9. Pursuant to *Commonwealth v. Pearson, supra*, we conclude that the trial court properly refused to grant a mistrial on this basis.

 In referring to Detective Hodge's first encounter with appellant, at the time he executed the warrant for appellant's arrest, the Commonwealth asked the Detective the following two questions: "Did you discuss sitting down with him and having an interview?" and "Did you in any way solicit any statement from Mr. Shotwell at that time?" (T.T. 3 /18/97 at 138, 139; R.R. at 37a, 38a.) Before Detective Hodge could answer the first question, appellant's counsel raised an immediate cautionary objection and the Commonwealth agreed to modify the question. Despite the attempted modification, the second question also drew an immediate cautionary objection. It, too, remained unanswered. Following a sidebar conference, the Commonwealth agreed to abandon the entire line of questioning. The witness did not answer either question, nor was there any indication of how he would have answered. The questions themselves were inartfully formed and raised no reasonable inference regarding appellant's post-arrest silence. *See Commonwealth v. DiPietro, supra.* Therefore, we conclude that these two unanswered questions, alone, do not necessitate a new trial on the ground that they violated appellant's constitutional right to remain silent. *See Commonwealth v. Pearson, supra.*

In his third issue, appellant asserts that the trial court erred in imposing restitution as part of his sentence because any debt owed to Ms. Gurba had been discharged in appellant's bankruptcy proceedings. Appellant claims that the victim was listed as an unsecured debt in dispute in his personal bankruptcy proceedings and that she did not timely challenge the discharge of the debt in dispute. If the debt to Ms. Gurba has been discharged, appellant reasons, then the trial court had no authority "to reimpose" the debt through an order of restitution. In effect, appellant concludes that the order for restitution is void and unenforceable.

Preliminarily, we note that Pa.R.App.P. 2119(a) requires the argument section of an appellate brief to develop the particular point stated with adequate discussion and citation to pertinent authorities. Pa.R.App.P. 2119(a). Here, appellant's argument on this issue is limited to conclusory statements, that the restitution order is preempted by the bankruptcy discharge and should be omitted, without citation to any relevant supporting authority. On this basis, we could deny further review of appellant's restitution issue. *See generally Commonwealth v. Zewe*, 444 Pa.Super. 17, 25–26, 663 A.2d 195, 199 (1995), *appeal denied*, 544 Pa. 629, 675 A.2d 1248 (1996)(right to appellate review waived where appellant makes only bald assertion unsupported by relevant legal authority).

The Commonwealth also argues that this issue is waived because appellant did not raise it before the trial court and is raising it for the first time on appeal. Throughout the sentencing proceedings, appellant repeatedly claimed that he intended to pay restitution in full and that he had already begun to do so in a show of good faith and in an effort to reduce or eliminate his jail sentence and lengthy probation period. Nowhere in the proceedings does appellant ever refer to his bankruptcy proceedings as a bar to Ms. Gurba's recovery. (S.T.6/5/97) Thus, we agree that this issue was not presented to the trial court for its consideration. *See Commonwealth v. Jarvis*, 444 Pa.Super. 295, 663 A.2d 790 (1995)(although new Pa.R.Crim.P. 1410 characterizes a motion to modify a sentence as "optional," the rule makes clear that only those issues first presented to the trial court will be deemed preserved on appeal).

 Ordinarily, a challenge to a criminal restitution order is a challenge to the discretionary aspects of sentencing. Pennsylvania criminal courts have the authority to incorporate restitution as part of a sentence. 18

Pa.C.S.A. § 1106; *Commonwealth v. Gerulis*, 420 Pa.Super. 266, 288, 616 A.2d 686, 697 (1992), *appeal denied*, 535 Pa. 645, 633 A.2d 150 (1993). Whenever restitution has been ordered pursuant to Section 1106, the court is required under the statute to order full restitution regardless of the current financial resources of the offender. 18 Pa.C.S.A. § 1106(c).

Here, however, appellant effectively challenges the trial court's ability to impose a criminal sentence of restitution following the discharge of a civil debt in bankruptcy.[5] The answer to this question hinges on whether the Federal Bankruptcy Code, as a matter of law, precludes a subsequent order of criminal restitution arising out of a debt allegedly discharged in the bankruptcy proceedings. If the answer is as appellant suggests, then the trial court's order of restitution is void *ab initio*. Thus, we will address this issue as a challenge to the legality of appellant's sentence. *See Commonwealth v. Wallace*, 368 Pa.Super. 255, 533 A.2d 1051 (1987)(sentences beyond the power of the court to impose are illegal sentences as a matter of law). *See also Commonwealth v. Lopez*, 444 Pa.Super. 206, 663 A.2d 746 (1995); *Commonwealth v. Anderson*, 434 Pa.Super. 309, 643 A.2d 109 (1994)(claim that sentence is beyond the court's power to impose can be raised for the first time on appeal).

The United States Bankruptcy Code at § 523(a)(7) provides:

> (a) A discharge under sections 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> (7) to the extent such debt is for a fine, penalty or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss....

11 U.S.C.A. § 523(a)(7). The leading case discussing Section 523(a)(7) in relation to the dischargeability of a restitution order en-

tered in a criminal proceeding is *Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986). The *Kelly* Court stated, "Courts traditionally have been reluctant to interpret federal bankruptcy statutes to remit state criminal judgments." *Id.* at 44, 107 S.Ct. at 358, 93 L.Ed.2d at 225. Generally, most courts have refused to allow a discharge in bankruptcy to affect the judgment of a state criminal court. *Id.* at 45, 107 S.Ct. at 358, 93 L.Ed.2d at 226. Moreover, the Court reasoned:

> The criminal justice system is not operated primarily for the benefit of victims, but for the benefit of society as a whole. Thus, it is concerned not only with punishing the offender, but also with rehabilitating him. Although restitution does resemble a judgment "for the benefit of" the victim, the context in which it is imposed undermines that conclusion. The victim has no control over the amount of restitution awarded or over the decision to award restitution. Moreover, the decision to impose restitution generally does not turn on the victim's injury, but on the penal goals of the State and the situation of the defendant. As the Bankruptcy Judge who decided this case noted in *Pellegrino [v. Division of Criminal Justice]*, 42 B.R. 129 (Bkrtcy.D.Conn. 1984): "Unlike an obligation which arises out of a contractual, statutory or common law duty, here the obligation is rooted in the traditional responsibility of a state to protect its citizens by enforcing its criminal statutes and to rehabilitate an offender by imposing a criminal sanction intended for that purpose."

*Id.* at 52, 107 S.Ct. at 362, 93 L.Ed.2d at 230. Therefore, a debt owed pursuant to a restitution order arising out of a criminal conviction is nondischargeable under bankruptcy law, as criminal proceedings operate primarily for the benefit of the State. *Id.*[6]

In the instant case, appellant filed a bankruptcy petition on January 5, 1996, while he was in the midst of his scheme to defraud

---

5. We make no determination on whether the debt was properly listed, noticed or discharged in appellant's bankruptcy proceedings.

6. Under this analysis, we see no reason to draw any distinction based upon when the restitution

order was entered, either prior to or subsequent to the alleged bankruptcy discharge as the obligation of criminal restitution does not arise out of the same duty as did the allegedly discharged civil debt.

Ms. Gurba, his seventy-year-old victim. In his bankruptcy petition, appellant claims, he listed Ms. Gurba as an unsecured debt in dispute in the amount of approximately $75,-000.00. Appellant argues that Ms. Gurba did not contest the discharge of that disputed debt. Appellant also asserts that the Honorable John J. Thomas, United States Bankruptcy Judge, discharged his debts on January 21, 1997 in Federal Bankruptcy Court. Appellant maintains that Ms. Gurba is simply using the criminal proceedings to circumvent the discharge.[7] We disagree.

 Upon examination of the facts of this case, in light of the relevant law, we hold that an order of restitution, payable pursuant to the Pennsylvania Crimes Code, is not subject to discharge under the Bankruptcy Code. *See* 11 U.S.C.A. § 523(a)(7); *Kelly v. Robinson, supra.* We further hold that an order of restitution entered subsequent to a bankruptcy discharge is separate and distinct from any discharge involving a civil debt. Here, the trial court's order of restitution arose out of the traditional responsibility of the Commonwealth to protect its citizens by enforcing its criminal statutes and to rehabilitate offenders by imposing a criminal sanction intended for that purpose. *See id.* Neither the Bankruptcy Code nor Pennsylvania law will allow appellant to avoid the consequences of his criminal scheme, as the decision to impose restitution turns on the penal goals of the State and the situation of the offender. A condition of restitution in a criminal sentence simply does not recreate the civil debtor-creditor relationship that existed in the bankruptcy proceedings. *Id.* Accordingly, we will not disturb the trial court's restitution order.

Based upon the foregoing, we hold that the trial court properly admitted Detective Hodge's testimony regarding his investigation. We also hold that appellant was not entitled to a mistrial due to alleged references to his silence. Finally, we hold that appellant's discharge in bankruptcy did not affect the trial court's authority to order restitution as part of appellant's judgment of sentence. Accordingly, we affirm.

Judgment of sentence affirmed.

---

7. We note the arrogance of appellant's claim set forth in a form of proverbial "projection." Instead, we view appellant's actions in this case as a flawed effort to use the Bankruptcy Code to do an end run around the criminal justice system.