Commonwealth of Pennsylvania, Appellant *v.* Franklin P. Tyson, Appellee.

Commonwealth of Pennsylvania, Appellant *v.* William J. O'Hara, William J. O'Hara, Inc. and O'Hara Sanitation Co., Inc., Appellees.

Argued March 2, 1981, before Judges WILKINSON, JR., BLATT and WILLIAMS, JR., sitting as a panel of three.

*Keith Welks,* Assistant Attorney General, for appellant.

*Joseph A. Ciccitto,* Assistant Public Defender, for appellee, Franklin P. Tyson.

*Daniel Quinlan,* for appellees, William J. O'Hara, William J. O'Hara, Inc. and O'Hara Sanitation Company, Inc.

OPINION BY JUDGE WILKINSON, JR., March 18, 1981:

The instant appeal presents two questions. First, does this Court have jurisdiction to entertain an appeal from an order of the trial court dismissing charges of criminal conspiracy[1] and violations of the Clean Streams Law?[2] Second, on the merits, did the trial court err in concluding that the appellees were denied a speedy trial pursuant to Pa. R. Crim. P., Rule 1100, which mandates that trial shall commence no later than 180 days from the date on which the complaint is filed? For the reasons stated hereinafter, we must answer both questions in the affirmative.

Criminal complaints were filed against the appellees on March 22, 1979. On September 13, 1979, a hearing was held before President Judge RICHARD S. LOWE of the Court of Common Pleas of Montgomery County. At this time, the Commonwealth indicated that it was prepared to commence trial. The appellees, however, interposed an objection at this point to the propriety of the representation of the Commonwealth by an Assistant Attorney General from the Department of Environmental Resources. Judge LOWE deferred his ruling on this objection until September 17, 1979.

On September 17, Judge LOWE ruled that the Assistant Attorney General would not be permitted to proceed with the prosecution unless a petition was

---

[1] Section 903 of the Crimes Code, *as amended,* 18 Pa. C. S. §903.

[2] Appellees were charged with violating Sections 301 and 307 of the Clean Streams Law (Act), Act of June 22, 1937, P.L. 1987, *as amended,* 35 P.S. §§691.301, 691.307 relating to the unlawful discharge of industrial wastes into the waters of the Commonwealth.

filed seeking permission to intervene and supersede the District Attorney.

On September 18, 1979, the 180th day under Rule 1100, the Commonwealth docketed a petition for extension of time for commencing trial. The following day, the appellees filed a petition to dismiss charges under Rule 1100. On September 28, 1979, the Commonwealth filed the required intervention petition.

Judge Lowe again conducted hearings on October 1 and 2, 1979. The Assistant Attorney General was granted permission to represent the Commonwealth. Additionally, Judge Lowe ruled that the requirements of Rule 1100 had been satisfied by the Commonwealth. Several other outstanding motions were also ruled upon at this time. Written orders followed these decisions.

The appellees immediately requested that Judge Lowe approve their appeal to the Pennsylvania Supreme Court from his interlocutory decisions on the intervention and Rule 1100 questions. Such approval was granted. The Supreme Court, however, denied the appellees' petition for permission to appeal from these interlocutory orders. Judge Lowe then ordered that trial on the original charges commence within 120 days of the Supreme Court order, entered November 30, 1979.

On March 10, 1980, the case was called to trial before Judge Vincent A. Cirillo also of the Court of Common Pleas of Montgomery County. Appellees again filed motions to dismiss under Rule 1100. On March 11, 1980, following argument, Judge Cirillo issued an order granting these motions and dismissing all charges. This appeal followed.

Appellees contend that jurisdiction over this appeal lies with the Superior Court, not this Court. The pertinent part of the jurisdictional statute in question provides that:

[T]he Commonwealth Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in any of the following cases:

. . . .

(2) Governmental and Commonwealth regulatory criminal cases.—All criminal actions or proceedings for the violation of any:

. . . .

(ii) Regulatory statute administered by any Commonwealth agency. . . . The term 'regulatory statute' as used in this subparagraph does not include any provision of Title 18 (relating to crimes and offenses).

Section 762(a)(2)(ii) of the Judicial Code, 42 Pa. C. S. §762(a)(2)(ii).

The appellees are charged with violating Sections 301 and 307 of the Act and with conspiracy to violate the Act under Section 903 of the Crimes Code. Appellees first argue that because they are being criminally prosecuted under the Act, this appeal from a dismissal of that prosecution is not within our appellate jurisdiction. It is clear, however, that Section 762(a)(2) of the Judicial Code vests appellate jurisdiction in this Court over certain criminal matters. We conclude, after reviewing the entire Act and its purposes,[3] that the Act is a "regulatory statute" within the meaning of Section 762(a)(2)(ii) of the Judicial Code.[4] The fact that the Act provides for the imposition of

---

[3] *See* Sections 3 and 4 of the Act, 35 P.S. §§691.3, 691.4.

[4] This conclusion is buttressed by the Supreme Court's implied recognition of the Act as a regulatory statute when it was considering the constitutionality of the Act. Referring to the Act, it stated "[a] state in the exercise of its police power may within constitutional limitations . . . enact *regulations* to promote the public health, morals or safety and the general well-being of the community." *Commonwealth v. Harmer Coal Co.*, 452 Pa. 77, 92, 306 A.2d 308, 316 (1973), *appeal dismissed*, 415 U.S. 903 (1974). (Emphasis added.)

criminal penalties, Section 602 of the Act, 35 P.S. §691.602, does not change its overall character as a statute regulating certain conduct within the state. In addition, the Department of Environmental Resources is a Commonwealth agency within the definition of Section 762(a)(2)(ii) of the Judicial Code and is empowered to administer the Act. Section 1901-A(20) of the Administrative Code, Act of April 9, 1929, P.L. 177, *as amended,* added by Section 20 of the Act of December 3, 1970, P.L. 834, 71 P.S. §510-1(20); Section 5 of the Act, 35 P.S. §691.5. We, therefore, have appellate jurisdiction over a criminal action or proceeding charging a violation of the Act.[5]

Secondly, appellees argue that because the charge of conspiracy is a Title 18 charge, the last sentence in Section 762(a)(2)(ii) of the Judicial Code operates to divest our Court of jurisdiction over this appeal. While conspiracy is clearly a crime under Title 18, we cannot ignore the fact that it is a crime based on the existence of another separate attempted, planned or completed crime. *See* Section 903 of the Crimes Code. We believe, under the facts of this case, where appellees have been charged with both a violation of the Act and conspiracy to violate the Act and where this

[5] Prior cases have not been consistent on the issue of where appellate jurisdiction in these criminal actions should lie. Cases exist where jurisdiction has been assumed, without objection, by both our Court and the Superior Court. *Compare Department of Environmental Resources v. Fleetwood Borough Authority,* 21 Pa. Commonwealth Ct. 349, 346 A.2d 867 (1975) *with Commonwealth v. Peggs Run Coal Co.,* 232 Pa. Superior Ct. 361, 334 A.2d 713 (1975). It is possible that Section 762(a)(2)(ii) of the Judicial Code, which is a new subsection not derived from the former Appellate Court Jurisdiction Act, was the legislature's recognition and resolution of this Jurisdictional conflict. *Compare* Section 402 of the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, *as amended,* 17 P.S. §211.402, repealed by Section 2(a) [1443] of the Act of April 28, 1978, (Judiciary Act Repealer Act), P.L. 202 *with* Section 762(a)(2)(i) and (ii) of the Judicial Code.

Court has appellate jurisdiction of the substantive Act violation, we should also have jurisdiction over the closely related conspiracy charge. In doing so, we note that the interests of judicial economy and the expeditious administration of justice are furthered when two charges arising out of the same facts can be appealed to the same court. The alternative of appealing the Act violation to this Court and the conspiracy charge to the Superior Court would require repetitious appellate presentation and could lead to conflicting adjudications. Indeed, if the two charges had been split up on appeal between our Court and the Superior Court, it is possible that the Superior Court would have transferred its half of the case to this Court within its power under Section 705 of the Judicial Code, 42 Pa. C. S. §705, and Pa. R.A.P. 752(a), allowing such a transfer where the same or related questions of law and fact are involved.

The broad question addressed by Judge CIRILLO in March 1980 and by this Court now is whether, after the filing of criminal complaints on March 22, 1979, 180 days passed without either the commencement of trial or a valid extension of the time for same.

We first note the rule that absent some evidence it is improper for a trial judge to overrule an interlocutory order by another judge of the same court in the same case, has been applied to Pa. R. Crim. P., Rule 1100. *Commonwealth v. Eck,*      Pa. Superior Ct.      , 416 A.2d 520 (1979), *Commonwealth v. Griffin,* 257 Pa. Superior Ct. 153, 390 A.2d 758 (1978). We decline to accept the Commonwealth's position that Judge CIRILLO's March 11, 1980 order was a nullity. Though he did not have new testimony before him, the judge did then have an accumulation of more than five months of events to consider.

September 18, 1979 was the 180th day after the filing of the criminal complaints. We find no impro-

priety in the prosecution filing on September 17th its petition for extension; Judge Lowe did not rule until that day that he considered the defendants' objection to an assistant attorney general prosecuting the case to be well founded and supported by *Commonwealth v. Schab,* 477 Pa. 55, 383 A.2d 819 (1978). We further believe that the elements for a valid Rule 1100(c) extension were present. The "due diligence" of the prosecution is amply supported by the record—the transcripts of every hearing establish the prosecution's preparedness for and willingness to instantly proceed to trial and present evidence. Nevertheless, a series of pretrial hearings on discovery and the appointment of experts had to be conducted. Finally, once Judge Lowe made his September 17th ruling, the trial could not commence: the prosecution needed time to prepare, submit, argue and ultimately obtain a resolution of its petition for the assistant attorney general to participate. In light of the eleventh hour commotion and of the trial court's calendar (the next trial week was October 1, 1979), it was acceptable for the lower court to rule on October 1st on the petition for extension. *See Commonwealth v. Lane,* 245 Pa. Superior Ct. 146, 369 A.2d 335 (1976), *Commonwealth v. Ray,* 240 Pa. Superior Ct. 33, 360 A.2d 925 (1976).

We cannot agree that Judge Lowe deferred beyond October 1, 1979 action on the petition for extension. The judge did act on the petition at the October 1st hearing. After hearing a colloquy on the merits of the petition for extension and the defendants' motion to dismiss, the judge commented that his court "has done its best to conform to the philosophy and intent of Rule 1100 by scheduling trial today, Monday, October 1st, 1979," immediately ruled "that Rule 1100 has been satisfied" and denied the motion to dismiss.[6]

---

[6] An October 2, 1979 order of the court, approving a defense petition to seek an interlocutory appeal by permission, ruled that the Commonwealth acted as promptly as possible in the case.

The court and the parties next spent two days addressing the prosecution's petition to consolidate and the defendants' omnibus pretrial motions. The rules to show cause why the petition to consolidate and the omnibus bills should not be granted were marked returnable at the time of trial. We therefore conclude that the court had plainly proceeded "to the hearing of any motions which had been reserved for the time of trial'"[7] and thereby complied with Rule 1100.[8]

---

[7] Pa. R. Crim. P., Rule 1100(b) states that "trial shall be deemed to commence on the date the trial judge calls the case to trial." The Comment to Rule 1100 provides in pertinent part:

It is not intended that preliminary calendar calls should constitute commencement of a trial. A trial commences when the trial judge determines that the parties are present and directs them to proceed to voir dire, or to opening argument, or to the hearing of any motions which had been reserved for the time of trial, or to the taking of testimony or to some other such first step in the trial.

The comment has been cited with approval by our Supreme Court. *Commonwealth v. Kluska*, 484 Pa. 508, 399 A.2d 681 (1979), *cert. denied*, 444 U.S. 858 (1979).

[8] Pa. R. Crim. P., Rule 1100(c) provides that any order granting an extension application shall specify the date or period within which trial shall be commenced. This "trial" in fact continued until the defendants petitioned Judge Lowe to grant permission to take an interlocutory appeal. We take Judge Lowe's language on pages 345a-346a of the reproduced record (pages 211-212 of the transcript of October 1-2, 1979 hearing) as granting the supersedeas for purposes of Pa. R.A.P. 1313.

Mr. CICCITTO [One of two Defense Counsel]: Your Honor, I was under the impression, like Your Honor, that we petitioned the proper appellate court for permission to appeal. But Your Honor first has to give an indication of whether he will agree to certify it.

Mr. QUINLAN [One of two Defense Counsel]: That's right. I realize I have to petition the Supreme Court for the allowance, but as I read it, I cannot do that until Your Honor gives me permission to petition.

THE COURT: I'm going to tell both of you that I will, without any hesitancy, whatever, give you permission, in fact I invite the appeal, I think it would be wise to resolve

578

Accordingly, we will enter the following

AND NOW, March 18, 1981, the order of the Court of Common Pleas of Montgomery County, docketed to Criminal Division No. 1850-79 and 1898-79, dated March 11, 1980, sustaining motions to dismiss, is reversed. The cases are remanded to the court of common pleas for speedy trial forthwith.

---

these matters. It prejudices neither the Commonwealth nor the defense, and it will resolve these issues, rather than make a tremendous investment in time, money and effort, in a trial on the merits, only to find that an appellate court says, [Lowe], you made a mistake on Rule 1100, that case should have been dismissed.

Well, if they're going to so decide, why should we spend all this money on the trial. I think you're wise. I agree with you.