J-S19008-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JUSTIN C. OLIVER | : | |
| | : | |
| Appellant | : | No. 1342 MDA 2023 |

Appeal from the Judgment of Sentence Entered April 18, 2023
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s):  CP-38-CR-0000910-2022

BEFORE:   DUBOW, J., BECK, J., and COLINS, J.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED: AUGUST 8, 2024**

Justin Oliver ("Appellant") appeals from the judgment of sentence of seven days to one year's incarceration after a jury found him guilty of one count of Use/Possession of Drug Paraphernalia, 35 P.S. § 780-113(a)(32).  He challenges the denial of his Post-Sentence Motion for a New Trial, asserting that the trial court erred in instructing the jury that medical marijuana cannot be dispensed in plant form.  After careful review, we affirm.

**A.**

We glean the following relevant background from the certified record. On April 26, 2022, at approximately 8:00 AM, Sergeant Matthew Klein of the Pennsylvania State Police witnessed Appellant driving his pickup truck at a speed of 70 mph in a 55-mph zone.  Sergeant Klein pulled his patrol vehicle

_____

[*] Retired Senior Judge assigned to the Superior Court.

next to the vehicle and noticed that Appellant was not wearing a seatbelt and was texting on his cell phone. When Appellant's vehicle began to swerve, Sergeant Klein initiated a traffic stop.

After pulling Appellant over, Sergeant Klein approached the vehicle and noticed the smell of marijuana. He asked Appellant if there were any drugs in the vehicle, which Appellant denied while looking at the center console. When Sergeant Klein asked Appellant why he was looking at the center console and again questioned why his car smelled like marijuana, Appellant opened the center console and handed a Tupperware container to the officer. The container included "a lot of green shake that smelled like marijuana."[1]  N.T. Trial, 4/18/2023, at 18, 27. It also contained a metal grinder, a cigarette rolling device, and plant residue. In response to the officer's question, Appellant indicated that he had smoked marijuana that morning. *Id*. at 19. Sergeant Klein then conducted a field sobriety test and, after concluding Appellant could safely drive, released him but retained the container, grinder, and rolling device. The Commonwealth charged Appellant with possessing drug paraphernalia and numerous summary traffic offenses.[2]

---

[1] "Green shake" is produced by grinding larger sized marijuana buds down so it can be rolled into a marijuana cigarette to smoke. N.T. Trial, 4/18/23, at 18, 27.

[2] In particular, the Commonwealth charged Appellant with Driving Vehicle at Safe Speed, Prohibiting Text-Based Communications, and Restraint Systems. 75 Pa.C.S. §§ 3361, 3316(a), and 4581(a)(2)(i)(A), respectively

Appellant proceeded to trial on April 18, 2023. At trial, in addition to the above facts, Sergeant Klein testified regarding his 16 years of training and experience in identifying drugs and drug impairment. He stated that he charged Appellant only with the paraphernalia charge because "[a]s much marijuana as there was" he did not believe there was enough to charge him with possession. *Id*. at 26. He also testified that Appellant did not tell him he had a valid medical marijuana card or show him a valid medical marijuana card, and that holders of medical marijuana cards must "immediately display their medical marijuana card upon law enforcement questioning." *Id*. at 16, 35. Officer Klein also testified that the Medical Marijuana Act does not give medical marijuana cardholders the right to smoke medical marijuana in leaf form. *Id*. at 16-17.

Following the Commonwealth's case, Appellant's counsel moved for a judgment of acquittal, which the court denied. After defense counsel then indicated he would proceed with Appellant's case-in-chief, the court informed counsel that it would instruct the jury that medical marijuana is a controlled substance that can be legally used in various forms. "However, leaf, dry leaf, or plant forms are not legal, and it is not lawful to smoke medical marijuana. . . . I'm going to be telling them that just because you have a medical marijuana card doesn't mean that you can legally possess all forms of marijuana." *Id*., at 37.

Appellant proceeded with his case by first calling his girlfriend, Heidi Thorton. She testified that the Tupperware container was what she kept her

medicinal marijuana in and that she used the "flower, marijuana, grinder, …
rolling papers and a roller in there" to smoke it. *Id*. She also stated that the
container usually has rolling papers in it. She further testified: "Usually the
container wasn't left in the vehicle. That particular time I had forgotten it
because there was a lot going on." *Id*. at 41-42. She testified that she did
not inform Appellant at any point that she had left the container in the vehicle.
On cross-examination, Ms. Thorton stated that she had testified on direct that
"**we** don't smoke around the kids" because "[a]t that time [Appellant] had his
medical card as well." *Id*. at 43 (emphasis added).

Appellant testified that after Sergeant Klein stopped him around 8:07
AM and asked about the smell of marijuana, he looked all around the car
before noticing the Tupperware container "buried underneath Ms. Thorton's
wallet and stuff" and put "two and two together." *Id*. at 46, 48. On cross-
examination, Appellant testified that he smoked marijuana with Ms. Thorton
when she wanted him to and that she would bring the Tupperware container
into the truck. He also testified that he did not remember if he had smoked
marijuana the morning Officer Klein pulled him over but stated that he had
smoked "probably the day before." *Id*. at 49.

Following closing arguments, the court provided standard jury
instructions describing, *inter alia*, the elements of the drug paraphernalia
offense and relevant to this appeal stated, "[t]he medical marijuana law
specifically says marijuana may not be dispensed in leaf or dry leaf or plant

form. The medical marijuana law specifically says it is unlawful to smoke marijuana." N.T. Trial at 64.

After providing the jury instructions and asking counsel if they had any corrections or additions, defense counsel requested a sidebar and informed the court that "[t]he Department of Health has authorized dispensaries to sell flower pursuant to the medical marijuana act." *Id*. at 71. When the court stated that it had not used the term "flower," rather it had used "leaf, dry leaf, or plant," counsel pointed out that leaf, dry leaf, or plant can be dispensed for purposes of vaping and then agreed with the court that it cannot be smoked. After the court pointed out that the case is about drug paraphernalia, and counsel had not argued that the box was not drug paraphernalia, the court stated, "I went as far as I did because I didn't want them to go down a rabbit hole based upon some misperception of the medical marijuana law that they may have read or heard from a friend." *Id*. at 71-72. Appellant's counsel then stated: "I don't want the implication out there that this is street weed when it could be medical marijuana that was used legally." *Id*. The court responded that it would not "go down that rabbit hole" because "that box did not have labelling. That box was just not lawful medical marijuana, it wasn't." The court concluded the discussion by informing counsel it would provide no further instructions.

Following deliberations, the jury found Appellant guilty of Possession of Drug Paraphernalia. The court found him guilty of the summary traffic

offenses. The court immediately sentenced him to a term of incarceration of one week to one year and a fine for the traffic offenses.

On April 26, 2023, Appellant filed a Post-Sentence Motion for a New Trial, arguing that the court abused its discretion by issuing an erroneous jury instruction. The Court issued an opinion denying the motion on August 29, 2023, opining that since the key issue disputed by the parties was whether Appellant possessed the contraband, even if the court had erred, it was irrelevant to the crime charged. Trial Ct. Op., dated Aug. 29, 2023, at 2.

Appellant timely appealed. Appellant filed Pa.R.A.P. 1925(b) Statement as ordered by the court. In response, the trial court entered an Order relying on its August 29, 2023 Opinion.

**B.**

Appellant presents two issues for this Court's review:

1. Did the court err when it misstated the law during jury instructions?

2. Did the court abuse its discretion when it misstated the law during jury instructions?

Appellant's Br. at 4.

**C.**

Appellant contends that the court erred in denying his post-sentence motion for a new trial because during jury instructions it "misstated the law under the Medical Marijuana Act." Appellant's Br. at 13. Specifically, Appellant avers that "[c]ontrary to the trial court's instruction, medical marijuana can be dispensed in dry leaf or plant form under the Medical Marijuana Act, and

- 6 -

has been since 2018." *Id*. He acknowledges that "case law generally does not find error in cases where the trial judge makes a small, technical error when, as a whole, the instructions fairly convey the legal principles at issue." *Id*. at 13-14. He nonetheless concludes the court's misstatement was prejudicial when "compounded by the court's other statements." *Id*. at 16.

"The decision to grant a new trial is within the trial court's discretion, and will not be reversed unless it represents an abuse of discretion." *Commonwealth v. Rodriguez*, 679 A.2d 1320, 1325 (Pa. Super. 1996). "A trial court has wide discretion in phrasing its jury instructions, and can choose its own words as long as the law is clearly, adequately, and accurately presented to the jury[.]" *Commonwealth v. Roser*, 914 A.2d 447 (Pa. Super. 2006) (citation omitted). "Discretion is abused . . . where the judgment is manifestly unreasonable or where the law is not applied or where the record show[s] that the action is a result of partiality, prejudice, bias, or ill will." *Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000) (citation omitted).

This Court reviews a challenge to a jury instruction to determine if the trial court abused its discretion or committed an error of law. *Commonwealth v. Brown*, 911 A.2d 576, 582-83 (Pa. Super. 2006). "When evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were proper." *Commonwealth v. Antidormi*, 84 A.3d 736, 754 (Pa. Super. 2014) (citation omitted).

"A jury charge is erroneous if the charge as a whole is inadequate, unclear, or has a tendency to mislead or confuse the jury rather than clarify a material issue." *Commonwealth v. Grimes*, 982 A.2d 559, 564 (Pa. Super. 2009) (citation omitted). In addition, "[a] faulty jury charge will require the grant of a new trial only where the charge permitted a finding of guilt without requiring the Commonwealth to establish the critical elements of the crimes charged beyond a reasonable doubt." *Commonwealth v. Hansley*, 24 A.3d 410, 420 (Pa. Super. 2011) (citation omitted).

**D.**

The Commonwealth charged Appellant with violating Section 780-113(a)(32) of the Controlled Substance, Drug, Device & Cosmetic Act which prohibits "the use of, or possession with intent to use, drug paraphernalia for the purpose of . . . converting, [ ], processing, preparing, . . . storing, containing, concealing, . . . ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of this act." 35 P.S. § 780-113(a)(32). Thus, in order to find Appellant guilty, the Commonwealth had to present evidence that the items found in Appellant's car were drug paraphernalia and that Appellant possessed them.

Here, the court issued the following jury instruction with respect to the drug paraphernalia charge:

> I told you in the beginning there are two elements. Element number one is the Defendant possessed an item. And element number two, the item was drug paraphernalia. . . .

First of all, possession.  A person possesses an item when they have the power to control and the intent to control.  Power and intent to control.  More than one person can possess an item.  Two people can jointly possess an item so long as they all have the power and the intent to control.  A person acts with intent when it is his or her conscious object or purpose to possess an item.  You cannot possess an item accidently.  You cannot possess an item legally if you do not know it is there, even if it is there, even if it's on your person, even if it is there, even if it's on your person, even if it's in your house.  If you have no knowledge that it is there, then you cannot under the law be deemed to possess it.  So one more time, possession is the power to control and the intent to control.

Drug paraphernalia. I told you I have to give you a long, convoluted definition, so here it goes.  Drug paraphernalia is any item that is used, intended to use, or designed to be used for the purpose of planning, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, store, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance.  That's the long version.  The short version[:] it's any item used to store, transport, or ingest a controlled substance.

So . . . I'm going to give you an education about medical marijuana because there is so much out there right now about medical marijuana and there is so much confusion and there is so much misinformation. . . .  Medical marijuana is a controlled substance.  And the fact that a medical marijuana law exists does not change that reality.  . . . **Just because some people have a medical marijuana card doesn't mean that marijuana has suddenly become a legal substance.  It is not.  It is a controlled substance.**  Unless it is prescribed and unless it is possessed in a specific manner, it is unlawful to possess marijuana.

The other thing that is very widely confusing to people is the form of marijuana.  Marijuana can be legally possessed in its medical forms.  Those forms include pills, oils, gels, creams, vapors, or liquid.  The medical marijuana law specifically says marijuana may not be dispensed in leaf or dry leaf or plant form.  **The medical marijuana law specifically says it is unlawful to smoke**

**marijuana.** Let me repeat that. It is unlawful to smoke marijuana. So even somebody with a medical marijuana card cannot smoke it lawfully.

In addition, to be possessed lawfully, marijuana must be in a specific container that was dispensed by a lawfully licensed dispensary. The marijuana must be packaged in a container that has a name of the grower, the processer, the dispenser, and that label must include the form and species of the medical marijuana. **If the medical marijuana is not contained in that type of packaging, it is not lawfully possessed**. . . . It is legally possessed in certain forms and in certain ways when an individual is prescribed it by a physician. But it does not mean that if you have a medical marijuana card you can possess all types of marijuana. That is important for you. That is the prim[]er on medical marijuana law.

. . . [H]ad Mr. Oliver possessed a container of marijuana gel that had a proper label on it, he could not be charged with possession of drug paraphernalia because that is a proper form of marijuana. **As long as the label is proper, you can lawfully possess it and therefore the contained is not drug paraphernalia.** So I don't want you to get confused about the medical marijuana issue.

Let me respectfully suggest that **the real issue in this case is whether the Defendant had the power to control and the intent to control.** And there are very different arguments that were made to you on that issue. The Commonwealth and the Defendant have very different positions on whether the stuff that was in that box was possessed by the Defendant, whether he had the power and the intent to control it. That, let me respectfully suggest, is the primary issue upon which you must focus. That's why you're here. **I don't want you to get caught up and going down some rabbit hole based upon what you may believe about medical marijuana.** Okay, everyone get that? **The focus is on possession. The power and intent to control, that is the real issue.**

* * * *

N.T. Trial at 62-64 (emphasis added).

Appellant contends that the Court erred in instructing the jury when it provided a definition of medical marijuana that failed to incorporate specific recommendations made by the Pennsylvania Secretary of Health. Appellant's Br., at 13. In support, he provides a quote from a newspaper article attributed to the former State Secretary of Health upon her acceptance of the recommendations of an advisory board, that "dry leaf or flower will be sold in Pennsylvania dispensaries." *Id.* at 13, 13 n.3. Additionally, he cites Title 28 of the Pennsylvania Administrative Code as defining medical marijuana as "a form medically appropriate for administration by vaporization or nebulization, including dry leaf or plant form for administration by vaporization." *Id.* at 13, 13 n.4. Appellant concludes that the court's error "was an uncontroverted, and unmitigated misstatement of law" that "was not corrected, despite Appellant's objection. And the jury was not given a proper instruction at any point regarding the legality of plant and/or leaf marijuana during the instruction phase of the trial." Appellant's Br. at 14-15.

In its Opinion denying Appellant's post-sentence motion, the court concluded that it had properly instructed the jury on the aspects of the medical marijuana law relevant to the evidence presented at trial and the crime of possessing drug paraphernalia charged. Trial Ct. Op. at 2-3. It opined:

> This Court did not err by educating a jury about the Medical Marijuana law given that the case involved marijuana and [Appellant] injected the Medical Marijuana law into his defense. We do not believe we erred in anything we said to the jury. However, even if our instruction could have been construed as incomplete . . . the record is crystal clear that the contraband

found [Appellant's] vehicle was not medical marijuana. It would have been improper for a jury to determine that it was, and this Court did not err by ensuring that the jury would not be confused when it focused upon the true issue of whether [Appellant] did or did not possess the contraband.

*Id.* at 8.

Following our review of the record and the jury instructions as a whole, we conclude that the court's instruction adequately and clearly apprised the jury of the law relevant to the crime charged and the evidence presented. Appellant does not dispute that the Tupperware box contained a controlled substance or that the other contraband found in the box was used for the consumption of a controlled substance. He also does not dispute that the Medical Marijuana Act does not allow a patient to smoke medical marijuana. Further, Appellant testified that he smoked marijuana with Ms. Thorton in their truck. N.T. Trial, 4/18/23, at 49. In addition, the Commonwealth presented evidence that the Tupperware box, the grinder, and the rolling device found in Appellant's vehicle contained evidence of marijuana that did not conform with the lawful possession of medical marijuana. *Id.* at 31, 18.

The court did not abuse its discretion in instructing the jury that the medical marijuana act allows possession of certain forms of marijuana and forbids ingestion by smoking. Whether the court erred in including "dry leaf or plant" as a form of the drug that may not be legally dispensed pursuant to the Act is not relevant to whether *under the facts of this case* the Commonwealth carried its burden of proving each element of the possession of drug paraphernalia offense.

Finally, Appellant contends that the trial court's "statement has the added effect of further prejudicing Appellant by tarnishing Thorton's credibility." Appellant's Br. at 16. In support, he reiterates Ms. Thornton's trial testimony and concludes that if the jury had believed her, it would have found him not guilty. *Id.* 16-17.

Without citation to the record, as required by our briefing rules, Appellant asserts that "the jury was instructed by the trial court that Thorton was lying when she claimed to have obtained plant marijuana with her medical marijuana prescription[.]" *Id.* at 17. *See* Pa.R.A.P. 2119(c) (requiring citation to record); 2101 (providing the failure to conform with our briefing rules may result in waiver). Likewise, Appellant provides no case law or other authority to support his somewhat disingenuous attempt to imply that court's instruction somehow usurped the jury's ability to weigh the evidence presented to render its credibility determinations. *See* Pa.R.A.P. 2119(a) (requiring citation to supporting authority). This claim is facially meritless and, in all events, waived for failing to comport with our briefing requirements. Pa. R.A.P. 2101.[3]

---

[3] Moreover, our review indicates the court did not make any such statement regarding the credibility of Ms. Thorton's testimony during its instructions or at any other time in the proceeding. Counsel is advised of the obligation set forth in our Rules of Professional Responsibility to present accurate information to judicial bodies.

**E.**

We conclude the court's instruction adequately and clearly informed the jury of the law and, thus, properly exercised its discretion in denying Appellant's post-sentence motion seeking a new trial.

Judgment of sentence affirmed.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/8/2024